# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 37832

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

LAZARUS SALAZAR,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

**2012 Opinion No. 9**

**Filed: February 13, 2012**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. James C. Morfitt; Hon. Bradly S. Ford, District Judges.

Judgment of conviction and sentences for two counts of aggravated battery, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

LANSING, Judge

Lazarus Salazar appeals from the judgment of conviction entered upon a jury verdict finding him guilty of two counts of aggravated battery. He contends the trial court erroneously admitted a detective's testimony identifying Salazar as the person shown in a security system photograph taken during the offense. He also asserts that his sentences are excessive.

## I.

## BACKGROUND

On March 6, 2009, two rival gangs fought outside the entrance of a Nampa grocery store. During the fight, which was captured on the store's video surveillance system, one of the men from the first gang stabbed two men from the second gang. Law enforcement concluded that Salazar was the perpetrator of the stabbings. He was charged with two counts of aggravated battery, Idaho Code §§ 18-903(a), 18-907(a)(b); with two corresponding deadly weapon sentence

1

enhancements, I.C. § 19-2520; and two enhancements for committing the batteries with the intent to promote the activities of a criminal gang, I.C. § 18-8503.

The store's security videos show that the man who stabbed the two victims had a shaved head and sported a goatee. During Salazar's trial, a police detective was presented with a still picture of this man taken from one of the surveillance videos. Over Salazar's objection, the detective was allowed to testify that he recognized the person shown in the photo as Salazar. Salazar was found guilty of all charges. The district court imposed, inclusive of sentence enhancements, a unified sentence of thirteen years' imprisonment with five years fixed on one count and a consecutive unified sentence of twenty-four years with ten years fixed on the other.

Salazar appeals, contending that the court erred in admitting the detective's identification testimony and that the court imposed excessive sentences.

## II.

## ANALYSIS

### A.     Security Videotape Identification Testimony

The detective's testimony that he believed the person in the photograph to be Salazar amounts to lay opinion testimony; it therefore is governed by Idaho Rule of Evidence 701. As relevant to this case, that rule provides that lay opinion testimony is admissible if it is rationally based on the perception of the witness, helpful to a determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge.

In *State v. Barnes*, 147 Idaho 587, 590-96, 212 P.3d 1017, 1020-26 (Ct. App. 2009), we addressed the admissibility under Rule 701 of testimony identifying a person in a still picture or video. We adopted a totality of the circumstances approach and identified a number of factors that should be considered by a trial court when testimony of this kind is proffered. We said that the inquiry ultimately is whether there is "some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Id.* at 594, 212 P.3d at 1024 (citation omitted). The factors to be examined include the quality of the image. *Id.* at 592, 212 P.3d at 1022. That is, if the image is either unmistakably clear or hopelessly obscure, the witness will be no better suited than the jury to make the identification. *Id.* A second factor is whether the defendant's appearance has changed since the date the image was taken. *Id.* at 593, 212 P.3d at 1023. When there is evidence that the defendant's appearance has changed between the time of the photo's creation and the time of trial, identification testimony from a

2

witness familiar with the defendant's prior appearance is more likely to be helpful to the jury. Perhaps the most critical factor is the witness's level of familiarity with the defendant, which makes the witness better able than the jury to discern whether the person in the photo is the defendant. *Id.* at 592-94, 212 P.3d at 1022-24.

Salazar asserts that the detective's identification testimony here should have been disallowed because the State did not lay a foundation showing that the detective had a sufficient level of familiarity with Salazar to make the detective better equipped than the jury to determine whether he was the man in the photo. We review a trial court's conclusion that evidence is supported by a proper foundation for an abuse of discretion. *State v. Sheahan*, 139 Idaho 267, 276, 77 P.3d 956, 965 (2003); *State v. Groce*, 133 Idaho 144, 146, 983 P.2d 217, 219 (Ct. App. 1999).

Salazar asserts that "it is undisputed that [the detective] had one contact with [him], lasting approximately twenty minutes, three and one-half months after the incident" and therefore was no better positioned than the jury to make the identification. However, this argument hinges upon an incomplete depiction of the record. The State's proffer of the detective's lay witness opinion was the subject of two hearings initiated by the prosecutor and conducted during breaks in the trial. The prosecutor made an oral offer of proof, representing to the court that the detective would testify that he had met with Salazar for about twenty minutes approximately three and one-half months after the stabbings and that Salazar then had a shaved head (like the perpetrator in the photo) and a goatee, which differed from his appearance at trial because Salazar had since grown his hair out, sported a full mustache, and gained weight. The prosecutor also told the court that the detective, in his capacity as a police officer, "can say that he's met the defendant a number of times and had contacts with him," but to eliminate the possibility of unfair prejudice to Salazar from revealing numerous contacts with law enforcement, the prosecutor did not intend to elicit the number and details of those contacts in front of the jury.[1]

---

[1]    The prosecutor said that there was also another detective who could be called to identify Salazar in the photo who had known Salazar since he was in the sixth grade and had a number of contacts with him, the last such contact having been in 2005. The district court ultimately declined to allow this second detective's testimony on the ground that her most recent contact with Salazar was too remote to satisfy the familiarity requirement.

In objecting to the detective's identification testimony, Salazar argued that the detective had insufficient familiarity with Salazar to make him better able than the jury to determine whether Salazar was the person in the photo. He also objected that the prejudicial impact of the evidence would outweigh any probative value. He did not request, in aid of objection, clarification of the full range of the detective's contacts with Salazar nor seek leave to question the detective personally concerning the extent, frequency, or detail of those contacts.

At the second hearing, the district court overruled Salazar's objection to the testimony. Applying the *Barnes* factors, the court found that the quality of the still picture--neither unmistakably clear nor hopelessly obscure--favored admission of the identity testimony, and that the prosecutor's representations of Salazar's change of appearance also weighed in favor of admission. The court said that the proposed testimony would be admissible as helpful to the jury, assuming trial presentation of a proper foundation concerning the detective's contact with Salazar and knowledge of Salazar's change of appearance. It appears that the court determined that a foundation as had been described by the prosecutor would suffice.

The detective testified immediately after the second hearing. In accord with his stated intent, the prosecutor did not go into details of the detective's prior contacts with Salazar, but instead elicited general testimony that the detective knew Salazar and had interacted with him. The detective said that he had met with Salazar for about twenty minutes approximately three and one-half months after the stabbings and that Salazar then had a shaved head and a goatee, while at trial Salazar had grown his hair out, sported a full mustache, and had gained weight. The detective then identified the man with the shaved head in the crime scene still photo as Salazar.

We find no error in the trial court's determination that the foundation was sufficient for the detective's identification testimony. Although the foundational testimony given before the jury was limited, it referred to a twenty-minute period in which the detective was observing Salazar at a time when Salazar's appearance differed from his appearance at trial. Further, the prosecutor had represented to the court that the detective had multiple additional contacts with Salazar, which were not described to the jury in order to avoid undue prejudice to Salazar. It may have been preferable for the court to require that further foundation regarding these additional contacts be laid through the detective's testimony outside the presence of the jury, as permitted by I.R.E. 103(c) and 104(c), but we cannot say that admission of the evidence on the

4

foundation actually presented constitutes an abuse of the trial court's discretion in light of the prosecutor's representations and the objective of preventing prejudice to Salazar.

Salazar also posits error in the district court's rejection of Salazar's objection that the probative value of the detective's identification testimony was outweighed by its unfair prejudicial impact. This objection was based upon Idaho Rule of Evidence 403, which authorizes the exclusion of relevant evidence if its probative value would be substantially outweighed by the risk of unfair prejudice. When a trial court's application of this balancing test is challenged on appeal, we examine the decision for an abuse of discretion. *State v. Birkla*, 126 Idaho 498, 500, 887 P.2d 43, 45 (Ct. App. 1994).

Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case. Nearly all of the State's evidence in a criminal trial is presented to prove the defendant's guilt and, thus, is "prejudicial" to a defendant, but it is not inadmissible for that reason alone. Rather, evidence is unfairly prejudicial, and therefore subject to exclusion under Rule 403, if it suggests decision on an improper basis. *State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010); *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994).

Salazar argues that the detective's identification lacked probative value because the detective had insufficient contact with Salazar to make a reliable identification. This is just a reiteration of his foundation argument that we have rejected above. His argument on unfair prejudice is that the detective's identification testimony may have "seemed more valuable to the jury than it actually was" because of the detective's position as a law enforcement officer. This, however, is not a demonstration of unfair prejudice. It is little more than an assertion that the evidence was detrimental to Salazar's cause because the jury may have believed the detective's testimony. Because Salazar's claim of lack of probative value is without merit and he has identified no unfair prejudice from this testimony, the district court did not err in admitting the detective's identification testimony over Salazar's I.R.E. 403 objection.

## B.     Sentences

The district court imposed consecutive unified sentences of thirteen years with five years fixed for Count I and twenty-four years with ten years fixed for Count II, aggregating a unified term of thirty-seven years with fifteen years fixed. Salazar argues that in light of mitigating factors, his sentences are excessive.

In order to prevail on a claim that a sentence represents an abuse of discretion, the defendant must show that in light of the criteria, the sentence was excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Small*, 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984). Where reasonable minds might differ, the discretion vested in the trial court will be respected, and this Court will not supplant the views of the trial court with its own. *Small*, 107 Idaho at 505, 690 P.2d at 1337. In order to prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we consider the defendant's entire sentence, *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007), and conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

Salazar was twenty-three years old at the time of his offenses and is a documented gang member. For one so young, Salazar has amassed a significant criminal record including convictions for aggravated battery (twice), carrying a concealed weapon, resisting or obstructing officers, eluding an officer (twice), and disturbing the peace. His first aggravated battery was committed at age fourteen, when he stabbed someone. In 2005 he was convicted of another aggravated battery for shooting a rival gang member twice during an altercation that left a member of Salazar's own gang dead from a gunshot wound. After he violated probation in that case, Salazar's sentence was executed and he served the full term of his sentence. Salazar was released from prison in February 2009 and committed the present offenses one month later. After committing the present offenses, but before he was arrested for them, Salazar was charged with two additional aggravated assaults and a robbery. There had been no disposition of these most recent charges when Salazar was sentenced in the present case. This record shows Salazar to be exceptionally violent and dangerous, and undeterred by a previous imprisonment. It does not show that his sentences for the present aggravated batteries are excessive.

## III.

## CONCLUSION

Salazar has shown no error in the admission of the detective's identification testimony, nor has he shown that his sentences are excessive.  Therefore, the judgment of conviction and sentences are affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**